IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RALPH HANCE,
PLAINTIFF

VS.

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,
DEFENDANT

CASE NO. 1:08-CV-00825
(DLOTT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed his applications for disability insurance benefits (DIB) and supplemental security income (SSI) in March, 2005. He alleged an onset date of June 5, 2004. Plaintiff's applications were denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on August 10, 2007. At the hearing, Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), Kenneth J. Manges, Ph.D. and Medical Expert (ME), Milton E. Foreman, Ph.D. Following an unfavorable decision in October, 20075, Plaintiff processed an appeal to the Appeals Council, which refused review in October, 2008. Plaintiff then filed his Complaint with this Court in November, 2008, and sought judicial review of the final order of the Defendant Commissioner denying him benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in two respects. He first argues that the ALJ erred by not accepting the RFC opinion of treating physician, Dr. Chang. Plaintiff's second argument is that the ALJ erred in determining Plaintiff did not meet or equal Listing 12.04, 12.06 or 12.09.

## PLAINTIFF'S AND MEDICAL EXPERT'S TESTIMONY AT THE HEARING

Plaintiff stated he was born February 6, 1960, making him 47 years old at the time of the hearing. He is 5' 9" and 194 lbs., right-handed and divorced. He completed the 9th grade and had no vocational training. Plaintiff testified that he last worked in August 2006 doing custodial work.

Plaintiff testified that he has no energy, weakness, back pain, dizziness, palpitations, and breathing problems. He said that he uses oxygen at night and he still smokes one and one half packs of cigarettes a day. He sometimes has heart palpitations, but on a lesser basis, since his heart inflation procedure. Plaintiff's medications consist of Effexor, Cabafentin, Risperdal, Florin-F and Cogentin, from which he has no side effects.

Plaintiff estimated he could stand 20 minutes, walk "a couple of blocks", but he would need to rest, and sit 30 to 60 minutes and then he would have to get up. He was not sure how much he could lift. He also testified that he could reach and bend, but with difficulty, and he avoids stairs.

Plaintiff testified he has been on medication for depression since 1984. He further testified there are times when he cannot go to sleep because "I can't shut my mind down." He testified he has trouble concentrating on things, problems with his memory and crying spells, which occur at least once a week. He avoids seeing people and he only leaves his house about every two weeks because "people scare me."

Plaintiff further testified that he has not had anything to drink for over one year and he has not used drugs since he was a teenager. He takes his medications on a regular basis, but there have been times when he was not able to afford them.

As to his daily activities, he testified that he watches television, paces, reads, takes care of his personal needs, pays bills, and cooks in the microwave. He testified that he was capable of washing the dishes, doing the laundry at times, some vacuuming, and taking out the trash. (Tr. 578-606).

The medical expert, clinical psychologist, Milton E. Foreman, Ph.D., testified that upon his review of the record, without separating the effects of Plaintiff's non-compliance with

treatment and alcohol abuse, Plaintiff would meet the requirements of Listings § 12.04 and § 12.06, but that when Plaintiff complied with treatment and did not drink, his condition would not meet the listings. Dr. Foreman further testified that Plaintiff's hospitalizations were very brief and he improved "so dramatically" with treatment. Dr. Foreman testified that with Plaintiff's gender identity disorder, the amount of criticism and stress associated "can be very great." (Tr. 606-17).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently, can stand and/or walk for a total of 6 hours in an 8-hour workday. The individual can only occasionally stoop, kneel, crouch, twist and climb ramps and stairs. The hypothetical individual cannot crawl, balance or climb ladders, ropes or scaffolds. The hypothetical individual cannot operate hazardous machinery and cannot work at unprotected heights. Lastly, the hypothetical individual can perform only simple, routine, repetitive tasks and understand, remember and carry out short, simple instructions with no interaction with the general public and not more than occasional interaction with co-workers and supervisors. He can only make simple work-related decisions and no more than ordinary and routine changes in the work setting or duties and no more than very simple math. The VE responded that there would be a representative number of light and unskilled jobs, which Plaintiff could perform such as an assembler with 198 jobs in the regional economy and 48,790 jobs in the national economy, packaging with 2,038 jobs in the regional economy and 218,361 jobs in the national economy, and material handler with 21 jobs in the regional economy and 3,257 jobs in the national economy. The vocational expert further testified that there are some assembler jobs at the sedentary unskilled level that an individual could perform of which there are 15 jobs in the regional economy and 3,659 jobs in the national economy and packaging of which there are 125 jobs in the regional economy and 13,369 jobs in the national economy. (Tr. 617-23).

3

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has severe impairments of "chronic obstructive pulmonary disease/emphysema, tachycardia, low back pain (residuals of sprain/strain), dizziness, depression, post traumatic stress disorder (PTSD), alcohol dependence and generalized anxiety disorder." The ALJ found these impairments to be severe, but none to equal any Listing, either alone or in combination. The ALJ's residual functional capacity was assessed as follows:

> [Plaintiff] can lift/carry/push/pull up to twenty pounds occasionally and ten pounds frequently, and stand/walk in combination for six hours in an eight-hour workday. He can only occasionally crouch, stoop, kneel and climb ramps/stairs. He should not crawl, balance, climb ropes, ladders, or scaffolds, work at unprotected heights or around hazardous machinery, or work with concentrated exposure to fumes, noxious odors, dusts, or gases. He can perform only simple, routine, repetitive tasks, and understand, remember, and carry out only short and simple instructions. He cannot interact with the general public or interact more than occasionally with co-workers or supervisors. Any job should not require more than ordinary and routine changes in work setting or duties or more than simple work-related decisions. Also, any job should not require more than very simple math.

(Tr. 20). The ALJ further found that Plaintiff can perform a number of jobs which exist in representative numbers in the national economy. Therefore the ALJ found that Plaintiff was not disabled and unable to receive Social Security benefits. (Tr. 16-29).

## MEDICAL RECORD

Plaintiff was treated at Clermont Counseling Center beginning in July 2001 to start a two-year sex offender treatment program. (Tr. 219-28). He saw the doctor and was given medications, but did not return or engage in any services with the therapist. (Tr. 227). When he was seen on September 15, 2003, Plaintiff was dressed as a woman wearing makeup and jewelry. He was reporting difficulty sleeping, depression, sexual identity issues, and he was drinking 40 ounces of beer. (Tr. 146-50). On October 21, 2003, it was noted that Plaintiff had been off all psychotropic medications for three years. He was reporting feeling depressed and thinking about

4

suicide for several months. It was also noted that he was having anger problems. (Tr. 252). On December 29, 2003, Plaintiff was found to be feeling mostly good, but a little depressed at times. (Tr. 269). He was also taking his medications daily and sleeping well. *Id.* On May 4, 2004, it was noted that Plaintiff was doing well, but depressed. (Tr. 276). It was also noted that he was having difficulty paying his bills and he was not taking his medications. *Id.* Baltazar Anaya, M.D., saw Plaintiff on September 9, 2004, at which time he diagnosed major depression, PTSD, history of substance abuse, and partial compliance.

In March, 2005, Plaintiff was admitted to Clermont Mercy Hospital for suicidal ideation. (Tr. 191-99). While admitted, his drinking and medication compliance was discussed. He was advised to give his medication a chance and he was placed on Cymbalta. On discharge, Plaintiff was diagnosed with major depression without psychotic features and assigned a Global Assessment of Functioning (GAF) score of 60-65. *Id.*

In January, 2006, Plaintiff was again admitted to the hospital because he had stopped taking his medications for a week. (Tr. 489-93). Plaintiff reported having worsening mood symptoms and suicidal ideations. During that hospitalization, Plaintiff admitted that he was "close to becoming an alcoholic." (Tr. 489).

On May 3, 2006, Dr. Anaya diagnosed major depressive disorder, post traumatic stress disorder, generalized anxiety disorder, chronic back pain and alcohol dependence. (Tr. 383-84). Plaintiff reported drinking five beers a night and smoking two packs of cigarettes a day. *Id.* On November 21, 2006, Dr. Anaya noted that Plaintiff reported that he was feeling good both physically and mentally. He was not drinking then, but he was continuing to smoke. (Tr. 378, 380). On June 5, 2007, Dr. Anaya noted that he was not using any alcohol or drugs, but he was continuing to smoke. He also noted that Plaintiff had improved and when compliant, was responding to treatment. (Tr. 361-62).

Plaintiff was in a motor vehicle accident on June 5, 2004. He went to the ER that day, had x-rays which showed no sign of fracture. He received chiropractic treatment due to the accident. (Tr. 170-79).

Plaintiff saw Scott A. Behrens, M.D. on March 23, 2005, for complaints of chest tightness, rapid heart beat, and shortness of breath. At that time, Dr. Behrens felt that Plaintiff

5

had symptoms of angina. (Tr. 184). On June 9, 2006, an event recorder documented narrow complex SVT. (Tr. 517, 519-44). In a statement dated June 15, 2006, Dr. Behrens noted that Plaintiff could return to work on June 12, 2006. (Tr. 518).

On July 26, 2006, Plaintiff saw Madhukar Gupta, M.D. after being referred by Dr. Behrens due to recurrent episodic palpitations. He was found to have a narrow complex tachycardia, suggestive of atrial tachycardia. (Tr. 509-12). On September 11, 2006, Plaintiff complained of occasional heart beat skipping and occasional episodes of palpitations. Examination revealed that Plaintiff's heart was beating 62 beats per minute, his blood pressure was 110/70, and his weight was 162 pounds. His chest, cardiovascular system, and abdomen did not reveal any abnormalities. (Tr. 503-05).

Plaintiff began treating with Roger Kai-Di Chang M.D., in July 2006 for COPD, emphysema back pain, shortness of breath, dizziness and weight loss. (Tr. 408-09). Dr. Chang reviewed chest x-rays performed in April 2006, which showed COPD and he started Plaintiff on a Spiriva inhaler. *Id.* On May 16, 2006, a pulmonary function study found normal FVC with a normal FEV-1. (Tr. 350-51). A CT of the chest, performed in July 2006, showed mild emphysema. (Tr. 415).

On November 14, 2006, Dr. Chang completed a medical assessment of claimant's ability to perform work-related activities. (Tr. 354-57). Dr. Chang diagnosed COPD, back pain, hypotension, and mood disorder. He also reported that Plaintiff had signs and symptoms of exertional dyspnea. Dr. Chang opined that Plaintiff could lift/carry 15 pounds occasionally and 10 pounds frequently and stand/walk three hours total during an eight-hour workday and without interruption, less than one hour. Sitting was not affected. Dr. Chang further opined that Plaintiff could occasionally stoop, frequently kneel, but never climb or balance. Due to his breathing difficulties, Dr. Chang restricted Plaintiff from heights, chemicals, temperature extremes, dust, fumes, and humidity. Dr. Chang concluded that Plaintiff would benefit from predominantly sedentary work due to his poor lung function and postural hypotension. *Id.*

Plaintiff saw Dr. Chang again on December 27, 2006, and reported that his breathing had not changed much and his energy was about the same. (Tr. 396). Dr. Chang noted that even though he was taking Chantix, Plaintiff was still smoking two packs a day. *Id.* He was also

using oxygen at night. *Id.* Dr. Chang also noted that Plaintiff had gained weight and his dizziness had improved with Flonnef. *Id.*

A pulmonary function study performed on February 8, 2007, revealed evidence of obstructive defect, probably mild in severity. (Tr. 410).

Dr. Chang refilled Plaintiff's medication on March 12, 2007. (Tr. 395). Plaintiff reported that his dizziness was not bad, but his breathing was still pretty shallow and he was complaining of increased back pain with radiation to his legs. *Id.* On examination, Plaintiff's lungs were clear to auscultation with good air motion and he had only midline tenderness and some tenderness along the paraspinal lumbar area with positive straight leg raising on the right. *Id.*

The last treatment note from Dr. Chang is dated April 30, 2007. (Tr. 394). Plaintiff was complaining of low back pain and discomfort. *Id.* He reported however, that taking Vicodin once a day was working well. *Id.* Dr. Chang recommended that he continue with physical therapy for another month and refilled his prescription for Vicodin. *Id.*

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two

7

findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461*

U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v. *Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d

9

962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of

10

"little if any evidentiary value." *Nos* v. *Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon* v. *Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. § 404.1520a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). Plaintiffs level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3); *see Hogg* v. *Sullivan,* 987 F.2d 328,332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 404.1520a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that

11

provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. § 404.1520( c) - (f).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at an administrative hearing. *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS,* 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters,* 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen Plaintiff's medical records." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

12

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award

13

benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

Plaintiff initially contends the ALJ should have accorded controlling weight to the opinion of Dr. Chang, his treating physician. Plaintiff has treated with Dr. Chang since July 2006 for COPD, emphysema, back pain, shortness of breath, dizziness and weight loss. (Tr. 408-09) On November 14, 2006, Dr. Chang completed a medical assessment of plaintiff's ability to perform work-related activities. (Tr. 354-57). Dr. Chang diagnosed COPD, back pain, hypotension, and mood disorder. He reported that Plaintiff would benefit from predominantly sedentary work due to his poor lung function and postural hypotension. *Id.* Contrary to plaintiff's contention, the ALJ did not ignore Dr. Chang's opinion in assessing plaintiff's RFC. The ALJ incorporated many of Dr. Chang's postural and environmental restrictions. (Tr. 20). The ALJ weighed, Dr. Chang's opinion as follows:

> As for the opinion evidence, with respect to the functional capacity assessment by Dr. Chang found in Exhibit 8F, the record does not support a sedentary residual functional capacity assessment due to his lung function and hypotension. Claimant's COPD has been found to be mild. Plaintiff testified at the hearing that he was capable of cooking, doing the dishes, laundry, vacuuming, and taking out the trash and stated that he needed help when lifting over 40 pounds.

(Tr. 27, citation to record omitted).

Substantial evidence supports the ALJ's decision not to include the restrictions of lung function and hypotension. For example, a May 16, 2006, pulmonary function study showed a normal FVC with a normal FEV-1 and mild obstructive lung disease. (Tr. 350-51). A CT of the chest performed in July 2006 showed only mild emphysema. (Tr. 415). The ALJ further noted that the severity of Plaintiff's complaints of COPD were inconsistent with his continued smoking despite being repeatedly advised to quit smoking. (Tr. 25, 406-

14

07). To be afforded controlling weight, the opinion of a treating physician must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters*, 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2). Because Dr. Chang's assessment that plaintiff would benefit from predominantly sedentary work due to his poor lung function and postural hypotension was not fully corroborated by his own records or the other substantial evidence of record, the ALJ was not bound to give the treating physician's opinion controlling weight. *Walters*, 127 F.3d at 530.

Also, as the Commissioner notes, The ALJ relied on the VE testimony in which he listed sedentary type jobs which plaintiff could perform. This is consistent with Dr. Chang's RFC for sedentary work. (*See* Tr. 28). Even if we were to reject the ALJ's contention that Plaintiff had the capacity for light work, the VE's identification of a representative number of sedentary jobs which Plaintiff could perform makes the ALJ's contention harmless error. The burden of proving that he is under a "disability" rests with Plaintiff. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Plaintiff also urges in his Statement of Errors that the ALJ "substituted his opinion for a medical opinion," (Doc. 5 at 6). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see also Meece v. Barnhart*, 192 Fed Appx. 456, 465 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence). In the present case, the ALJ did not commit this error. He discussed and relied on various medical records at Steps 2 through 4 of his sequential evaluation. *See* Tr. 22-25. By doing so, the ALJ did not substitute his own lay opinion in place of medical source opinions on medical issues.

Plaintiff argues that in determining his impairments do not functionally equal Listing 12.04, 12.06 or 12.09, the ALJ improperly relied on the opinion of Dr. Foreman, who testified at the hearing as a ME. In assessing Plaintiff's impairments and determining functional equivalence, the ALJ reasonably relied on the testimony of the ME. (Tr. 26-27).

In *Richardson v. Perales*, 402 U.S. 389, 408 (1971), the Supreme Court held that it is acceptable for the ALJ to use a medical expert, because the expert's primary duty is to make complex medical cases understandable to the layman examiner. Moreover, the medical expert can offer his own opinion regarding Plaintiff's condition. *See* 20 C.F.R. § 416.927(f)(2). The ALJ can properly rely on the testimony of a non-examining medical expert in order to make sense of the record. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). In addition, an ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1308-09 (6th Cir. 2001).

As noted above, Dr. Foreman testified at the hearing that without separating the effects of Plaintiff's non-compliance with treatment and alcohol abuse, Plaintiff would meet the requirements of Listings § 12.04 and § 12.06, but that when Plaintiff complied with treatment and did not drink, his condition would not meet the listings. (Tr. 606-17).

Plaintiff argues that based on his mental diagnoses, the testimony of Dr. Foreman and the medical records from Dr. Anaya, the ALJ should have found he meets Listing 12.04 and 12.06, but he fails to cite to any evidence that shows he was unable to follow prescribed treatment.

## CONCLUSION

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker*, 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services*, 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, we recommend that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date 2/17/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Batten\Hance.wpd